THE PEOPLE *ex rel.* John D. Caton

*v.*

THE OTTAWA HYDRAULIC COMPANY *et al.*

*Filed at Ottawa November 14, 1885—Rehearing denied March Term, 1886.*

1. CORPORATION—*waiver of ground of forfeiture by subsequent legislation.* Although a corporation organized under the general act of 1849, failed and neglected to carry out the object of its creation, and engaged in another and entirely different business than that contemplated in the articles of association, so that a forfeiture of its franchise might have been declared, yet if the legislature, during the existence of such grounds of forfeiture, passed a law amending the act under which it organized, in which its corporate existence is clearly recognized, its acquisitions confirmed, its powers enlarged and new ones conferred so as to embrace its business as then being carried on, such amendatory act will in effect constitute a new charter, and operate as a waiver of any ground of forfeiture, and the corporation may afterward engage in any business authorized by such subsequent and amendatory act.

2. CONSTITUTIONAL LAW—*private law, as embracing more than one subject.* In 1853 the legislature passed an act entitled "An act to amend the act incorporating the Ottawa Hydraulic Company, and the La Salle County Manufacturing Company of Ottawa, both incorporated under the general law approved February 10, 1849," by which those corporations were recognized and legalized, and their powers enlarged, and the rights claimed by them confirmed. This act authorized these companies to acquire and hold real estate, by condemnation or otherwise, and relieved them from the burden imposed by the act of 1849, whereby their stockholders were individually liable to creditors to the amount of their stock: *Held,* that the act of 1853 was not in violation of section 23, article 3, of the constitution of 1848, which provides that "no private or local law which may be passed, etc., shall embrace more than one subject, and that shall be expressed in its title."

3. QUO WARRANTO—*sufficiency of the information to put the respondent upon his defence.* Where a number of individuals assume to act as a corporation, an information containing a general denial of their right to do so will be sufficient to put them to their plea of justification.

4. But where the information attempts to set out their title, which, when taken in connection with a public law, discloses such additional facts as make their title good, the information will be bad, and obnoxious to a demurrer.

5. PLEADING *a public law—whether necessary.* It is never necessary to plead a public law, and there is no difference in this respect between a public law, strictly so called, and one merely declared to be so by the legislature.

APPEAL from the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

On the 28th of November, 1884, the State's attorney filed in the circuit court of LaSalle county an information in the nature of a *quo warranto*, charging that on the 15th day of November, A. D. 1851, William H. W. Cushman, John V. A. Hoes, Lorenzo Leland, George H. Norris, George E. Walker, William Hickling and A. H. Howland pretended to organize, and went through the forms of organizing, a joint stock company or association, under the law of the State of Illinois approved February 10, 1849, under the name of the Ottawa Hydraulic Company, specifying the business to be done by said company as "to lease, use and occupy, and to sub-let water-power, lots and land, to build mills and factories, and, generally, to carry on a manufacturing and mechanical business," in the city of Ottawa, in said county. And the court is further informed that said pretended shareholders never paid in any of the capital stock of said company, or, at most, not more than a merely nominal amount thereof. And the court is further informed that the statement in the articles of association filed by the pretended incorporators, that the purpose of the proposed corporation was "to build mills and factories, and to carry on a manufacturing and mechanical business," was false and fraudulent, and merely colorable, and for the purpose of giving said corporation the appearance of legality, and not with the *bona fide* intention of ever carrying on any business which it was lawful for it to carry on under the said statute; and that the said company has never built any mills or factories or carried on any manufacturing or mechanical business pursuant to said declared purpose, but that the sole object of said company or organization was to carry on the business of speculating in water-power in and about the city of Ottawa, by renting water-power at a low price or rental, and sub-letting it at a much higher rental to

other parties, and dividing the profits thus accrued, which is the only business ever carried on by said pretended company from the date of its organization to the present time. And the court is further informed that one Douglas Hapeman, professing to act as president, and Lorenzo Leland, professing to act as secretary, of said pretended Ottawa Hydraulic Company, and sundry other people, are still carrying on the business of speculating in water-power, as aforesaid, under said pretended organization, and usurping the power and franchises of the State as aforesaid, all of which actings and doings were fraudulent, and by reason of said fraud, both in law and in fact, the said pretended organization of the said Ottawa Hydraulic Company was wholly void and of non-effect, and the carrying on of said business of speculating in water-power and the lands adjoining thereto, and the dividing the profits which accrued from said business, and all other business carried on by said pretended Ottawa Hydraulic Company, was in the exercise of a power usurped from the People of the State of Illinois, and without any legal authority for the exercise of said usurped power, by means of which the said pretended acts of incorporation were of no effect, and the incorporation under the laws of the State did not take place, by reason of the false and insincere statement of the purposes of such incorporation. And the court is further informed that said corporation, if any such exists, has forfeited *its* charter and corporate existence by the prostitution of the power of the State, to the damage and prejudice of said people and against the peace and dignity of the same. Wherefore the said State's attorney for the said people, and in the name and by the authority thereof, at the relation of the said John Dean Caton, prays the consideration of the court here in the premises, and due process at law against the said pretended organization and the said Douglas Hapeman and Lorenzo Leland, to make them answer to the said people by what warrant they claim to hold and execute the franchises afore-

said, so usurped from the People of the State of Illinois, and that upon a final hearing hereof the said act of incorporation may be declared to have been null and void, and that the said Hapeman and Leland, and all others claiming to act under and by virtue of said organization, may be ousted of all power and authority to exercise any franchise or power under and by virtue of said pretended act of incorporation. The court sustained a demurrer to the information, and entered an order dismissing the same. From that order an appeal is prosecuted to this court.

Mr. C. Beckwith, for the appellant.

Mr. Lorenzo Leland, and Mr. Hiram T. Gilbert, for the appellees.

Messrs. Bull, Strawn & Ruger, and Mr. L. W. Brewer, in reply.

Mr. Chief Justice Mulkey delivered the opinion of the Court:

The question presented for determination is, whether the court ruled properly in sustaining a demurrer to the information. It will be perceived the averments in the information, when stripped of all unnecessary verbiage, are, in substance and legal effect, that the company organized for the alleged purpose of establishing and carrying on a certain specified business, when, in truth and in fact, it intended to do nothing of the kind, but, on the contrary, intended to carry on altogether a different business, which it has alone pursued from the date of its organization to the present time, and that only a nominal portion of the capital stock, if any, has ever been paid in. In the case thus made, the company, as a corporate body, is assailed on three distinct grounds: First, that its organization was effected by false representations in

its original statement; second, that it has failed to perform
the duties which the law of its organization imposed upon it;
and third, that it is and has been, from the date of its or-
ganization, engaged in a business not warranted by its articles
of association,—or, more shortly expressed, the company is
assailed on the grounds of *fraud, mis-user* and *non-user.* To
this it is answered: First, that whatever cause of forfeiture
of the company's franchises may have originally existed, the
State has subsequently waived it, both by legislative recogni-
tion and by acquiescence in its exercise of corporate functions
for a period of over thirty years; second, that by the act of
1853, entitled "An act to amend the act incorporating the
Ottawa Hydraulic Company, and the LaSalle County Manu-
facturing Company of Ottawa, both incorporated under the
general law approved February 10, 1849," the legislature not
only recognized the legal existence of the defendant as a cor-
porate body, but that it expressly authorized it to do the very
acts now relied on as a ground of forfeiture of the company's
franchises.

That the act referred to is an unequivocal recognition of
the defendant's corporate existence is too plain to admit of
serious question. Such recognition distinctly appears both
in the title and body of the act. We also think it equally
clear that the leasing and sub-letting of water-power by the
company, as charged in the information, are fully justified
by the act in question. By the first section of the act it is
authorized "to hold, lease, transfer, use and enjoy all of the
property and privileges leased to it by the trustees of the
Illinois and Michigan Canal, and all such property and priv-
ileges the use and enjoyment of which have been granted to
it by the president and trustees of the said town of Ottawa,
and all such property and privileges as may hereafter be
granted to it by said canal trustees, president and trustees,
or any other corporation, or by any person." By the second
section the defendant and the La Salle County Manufacturing

Company, are authorized, jointly and severally, "to procure and hold all such real estate as may be deemed necessary or proper for the construction of races to conduct the water from the works of said companies, or either of them, of *their* or *either* of *their leases* or transfers, to the Illinois or Fox river, or both." By the third section the defendant is given an action of forcible detainer against any person who shall withhold the possession of any property so leased to it by the canal trustees, or the use and enjoyment of which were granted to it by the president and trustees of the town of Ottawa, for the recovery of the same. Thus it substantially appears from the face of the act itself, that at the time of its adoption the defendant then held leases and water privileges from the canal trustees and the town of Ottawa, and the manifest purpose of the act was to confirm the defendant in the rights which it had assumed under said leases, and to protect it in the business in which it was then engaged.

We agree with counsel for the defendant that the act in question is, in legal effect, a new charter. It recognizes the corporate existence of the defendant, confirms its acquisitions under its articles of association, enlarges its powers, and confers on it new and independent powers. To this it is replied, first, that the act of 1853 is unconstitutional; and secondly, conceding it is not, that the defence which it affords can not be availed of by demurrer to the information, but should have been presented by plea. We will consider these positions in the order stated.

The constitutionality of the act is assailed on the alleged ground that it is in conflict with so much of section 23, article 3, of the constitution of 1848, as declares: "No private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in its title." The defendant and the LaSalle County Manufacturing Company were both located at and doing business in the town of Ottawa, in 1853, when the above act was passed.

They were severally incorporated under the general Incorporation law of 1849, and were alike interested in the water privileges afforded by the canal at that place. One of the purposes of the act, as is apparent upon its face, was to enable the two companies to procure and hold real estate for the purposes already stated, and to authorize them to acquire it by condemnation proceedings, if it could not be otherwise obtained. It was also desired by the legislature to relieve these two companies thus similarly circumstanced, from the burdens imposed by the 10th, 11th and 12th sections of the act of 1849, under which they were incorporated. These sections, among other things, made the stockholders individually liable to the company's creditors to the amount of stock subscribed by them, respectively, until the whole of the stock was paid in, etc.    Now all this could well be accomplished by amending the general law of 1849, so far as it affected these two companies, and the legislature having adopted this course, we see no impropriety in it.    The general law, taken in connection with the several statements made by these companies for the purposes of incorporating, constituted their charter. The subject of the act of 1853 therefore was the amendment of the act of 1849, or of "the act incorporating" these two companies, and the additional powers conferred on the two companies were clearly germane to the amendment of the charter. It can hardly be that this objection is founded upon the fact that the legislature has, by a single act, conferred certain powers and privileges on two distinct corporate bodies. It would be just as reasonable to say that the legislature, by reason of the constitutional provision in question, could not make a joint grant to two separate persons, and no one, we presume, would contend for that for a moment.    The provision of the constitution in question has often been before this court, and we have no hesitancy in saying there is no good reason for the claim that the act of 1853 is unconstitutional on the ground suggested.    *O'Leary* v. *Cook County*, 28 Ill.

534; *Prescott* v. *Chicago*, 60 id. 121; *City of Virden* v. *Allan*, 107 id. 505; *Potwin* v. *Johnson*, 108 id. 70.

As to the claim that the act of 1853 should have been specially pleaded, little need be said. The question thus raised is so elementary in its character that it hardly admits of serious discussion. Where a number of individuals assume to act as a corporation, an information containing a general denial of their right to do so will be sufficient to put them to their plea of justification; but if the information attempts to set out their title, as was done here, and the facts disclosed for that purpose, when taken in connection with other facts appearing upon the face of a public statute, make the title good, the information will be necessarily bad. Such was the case here. It is a fundamental mistake to suppose that it is ever necessary to plead a public law; and there is no difference in this respect between a public law, strictly so called, and one merely declared to be so by the legislature. Sometimes such a law, as mere matter of composition, is specially pleaded, particularly in chancery proceedings; but there is no rule of law requiring it, and in proceedings at law it is regarded as violative of the principles of good pleading. The only charges contained in the information, affecting the original organization of the company or its subsequent right to act as a corporation, we regard as cured by the act of 1853, and this act is expressly declared to be a public act, hence there was no necessity, or even propriety, in pleading it specially. As to the failure of the stockholders to pay in the stock, we have already seen they are relieved from the performance of that duty by section 4 of the act of 1853.

This view of the case renders it unnecessary to discuss the defence of "lapse of time."

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHELDON, dissenting.

Mr. Justice Magruder: A petition for rehearing in this case has been considered by the court since I became a member of it. I dissent from the opinion. In my judgment a rehearing should have been granted.