(No. 11620.—Decree affirmed.)

James B. McClane, Appellant, *vs.* Arthur Dixon *et al.* Appellees.

*Opinion filed December 19, 1917.*

1. Churches—*special acts of 1857 and 1865 vest fee simple title in trustees of First Methodist Episcopal Church of Chicago.* The special acts of 1857 and 1865 vest in the trustees of the First Methodist Episcopal Church of Chicago a fee simple title to the property of said church society, with power to convey the same for the purposes specified in the acts, and the restrictions as to alienation and provisions for forfeiture contained in the acts of 1839 and 1840, under which the property was donated by the canal commissioners, are waived and released by said special acts.

2. Same—*what conveyance of church property is not in violation of the act of 1903.* A conveyance by the trustees of the First Methodist Episcopal Church of Chicago to the Chicago Methodist Episcopal Church Aid Society, by the terms of which the aid society is to construct a large building on the property, the second and third floors to be used for church purposes and the remainder for business purposes, from which part of the income is to be paid to the church and part to the aid society for church purposes, does not violate the act of 1903, regarding the conveyance of church property devoted to business purposes, and is not *ultra vires* the aid society.

3. Constitutional law—*act of 1903, relating to churches, is not invalid as special legislation.* A law, to be general, is not required to operate equally upon all persons or objects, but if it operates equally upon all who are similarly situated it is a general law, and tested by such rule the act of 1903, relating to church corporations, (Laws of 1903, p. 132,) is not invalid as special legislation.

Appeal from the Superior Court of Cook county; the Hon. Martin M. Gridley, Judge, presiding.

L. E. Sauter, for appellant.

James M. Sheean, and William W. Dixon, for appellees.

Mr. Justice Farmer delivered the opinion of the court:

Appellant, James B. McClane, filed his bill in the superior court of Cook county against the trustees of the First Methodist Episcopal Church of Chicago and the Chicago Methodist Episcopal Church Aid Society. The bill alleged appellant is a member in good standing of the above named church society, and the purpose and prayer of the bill were to remove as a cloud upon the title to the property of said church situate at the southeast corner of Washington and Clark streets, in said city, a deed made by the trustees of said church society, dated June 23, 1915, to the Chicago Methodist Episcopal Church Aid Society. The bill also sought to annul a certain written agreement made between the church and the aid society, executed contemporaneously with the deed and being the consideration for the deed. The bill alleged the incorporation of the church under an act of the General Assembly passed and in force in 1835, the acquisition of the lot in question by donation from the canal commissioners in August, 1841, under authority and by virtue of acts of the General Assembly passed in 1839 and 1840, and the issuance of a patent for the land to the church trustees by the Governor of the State of Illinois on February 20, 1856. The bill also alleged the incorporation of the aid society on January 7, 1915, and the resolution of the church society on February 16, 1915, authorizing the conveyance of the property to the aid society. This was done June 23, 1915, at which time an agreement between the church and aid society was entered into, by the terms of which the aid society, in consideration of the conveyance of the lot, agreed to erect not later than January 1, 1921, a large fire-proof building on a part of the lot in question, costing not less than $750,000, the second and third floors of said building to be devoted to church purposes, the re-

281 — 18

mainder for business purposes. The aid society was to pay said church society $10,000 per year from the rents and profits of said building, and the remainder of the rents and income from such building, after deducting the necessary expenses, should be used by the aid society to aid churches in the city of Chicago or for such purposes as are specified in the articles of incorporation of the aid society. The bill alleges the aid society is a corporation not organized for profit, and hence has no power to engage in the business of operating an office building, as contemplated by the agreement entered into by it with the church society. The bill alleges the deed and agreement are void because they violate the terms of the donation of said real estate and contravene the acts of the legislature pursuant to which the land was donated to the church society, and also that the transaction evidenced by the deed and agreement is *ultra vires* both as to the church and the aid society. A demurrer was sustained to the bill and the bill dismissed for want of equity, from which decree this appeal is perfected.

The Methodist Episcopal Church of the Town of Chicago was organized as a religious corporation under the statute of 1835. The name of the society was subsequently changed to the First Methodist Episcopal Church of Chicago. Under authority of the acts of 1839 and 1840, 130 feet off the north end of lot 4, block 57, original town of Chicago, was donated by the canal commissioners in 1841 to the trustees of the society and their successors in office "whereon to erect a church or place of public worship," and in 1856 a patent was issued to the trustees by the Governor of Illinois. The patent recited the donation of the property by the canal commissioners as a site whereon to erect a church or place of public worship was pursuant to the act of 1839 as amended in 1840. A building erected on the property in 1857 was destroyed by the great fire of October, 1871. Soon thereafter a four-story building, without elevators, was erected on the land. The first and second

floors were rented for business and office purposes. The third and fourth floors were appropriated to use for religious purposes, as an audience room for the congregation, church parlors, lecture rooms, etc. This building became impaired by natural decay, and the erection of adjacent buildings much taller materially affected the convenient use of the building. The trustees of the society filed a bill in chancery setting up the condition of the building on the property, how it was affected and its use interfered with and made inconvenient by the erection of adjacent tall modern structures, in addition to the decay, which would require the making of costly repairs, and which, if made, would still leave the building undesirable for business uses. The bill alleged that in order to secure adequate returns from the lot it would be necessary to make a ground lease for a term of not less than 99 years or tear down the present and erect a modern building, with elevators. The bill prayed that the powers of the trustees with reference to conveying or mortgaging the property to secure money to erect a new building, and their powers with reference to making a long-term ground lease, be defined. The circuit court decreed that it was not necessary that a place of worship be maintained in any building on the lot; that the trustees had power to tear down the building then on the lot and erect a new building not devoted in any part to religious purposes, or that said trustees had power to make a 99-year lease, or for a longer or shorter term if deemed expedient, for the purpose of permitting the property to be wholly devoted to other than religious uses, and that the trustees might provide a place of worship some other place in the city of Chicago. This court, in an opinion filed in February, 1899, reversed that decree. (*First Methodist Episcopal Church* v. *Dixon*, 178 Ill. 260.) The court referred to the provisions of the acts of 1835, 1856, 1857 and 1865, and held the trustees were authorized to convey the property by deed or mortgage for the purposes speci-

fied in said acts, but that they were without power to convey or mortgage the property for money to erect thereon a building to be wholly rented for business and commercial purposes or to make a long-term ground lease for those purposes.

In 1903 the legislature passed the following act: "That every church corporation organized under the laws of the State of Illinois is hereby given power through its board of trustees (or such other of its officers as shall have powers and duties similar to those of trustees) to lease, improve, mortgage, bond, sell, convey, or otherwise dispose of any lot or parcel of ground heretofore acquired by it for its own use, and which has been appropriated in whole or in part to business uses. The net proceeds or income derived therefrom to be appropriated to such uses or purposes as shall be authorized by a vote of its board of trustees (or of such other of its officers as shall have powers and duties similar to those of trustees): *Provided, however,* that no part of such net proceeds or income shall be used otherwise than in defraying the cost and expenses connected with improving, maintaining, operating and caring for said property, and the improvements thereon, and in paying the obligations of the church owning the same, and for church or religious purposes." (Laws of 1903, p. 132.)

The Chicago Methodist Episcopal Church Aid Society was organized in 1915 under the general Incorporation act of Illinois as a corporation not for pecuniary profit. The object for which the corporation was organized was "to aid in establishing Methodist Episcopal churches in the city of Chicago by the purchase of sites for church buildings to be used exclusively for religious purposes, and contributing toward the expense of erecting and maintaining church buildings to be used exclusively for religious purposes in said city, and also to contribute toward defraying the current expenses of Methodist Episcopal churches situated in

the original town of Chicago, in said city." Soon after
the incorporation of said aid society the contract above
referred to was entered into between the First Methodist
Episcopal Church of Chicago and said Chicago Methodist
Episcopal Church Aid Society for the conveyance of the
property of the church society to the aid society.

By the act of 1835, under which the church corporation
was organized, the trustees were given power, when au-
thorized by the congregation, to execute deeds of convey-
ance, such deeds to have the same effect as like deeds made
by natural persons, provided no deed of conveyance should
"defeat or destroy the interest or effect of any grant, do-
nation or bequest" made to any such society or congrega-
tion, but all grants, donations or bequests were to be ap-
propriated and used as directed by the persons making the
same.   The acts of 1839 and 1840, authorizing the canal
commissioners to donate lots to religious societies whereon
to erect houses of worship, provided that "the lots so do-
nated shall be unalienable by the society or congregation,
and whenever abandoned or used for any other purpose
than is expressed in this act shall revert to the State, to-
gether with all improvements made thereon." The restric-
tion against alienation and the condition of forfeiture in
case of the abandonment of the property or its being de-
voted to other uses than those expressed in the act under
which it was donated have been waived and released by
subsequent acts of the legislature. The special act of 1857
vested the fee, without any condition attached, in the trus-
tees of the society and their successors in office, with power
to convey the property in fee by deed or mortgage as se-
curity for money loaned the society "for the erection on
such real property of a place of worship or such other im-
provements as may be desired." Under that act the trus-
tees could only convey the property when authorized or di-
rected by the congregation. The special act of 1865 changed
the name of the corporation from the Methodist Episco-

pal Church of the Town of Chicago to the First Methodist
Episcopal Church of Chicago, and authorized the trustees,
without being so directed by the congregation, to convey
the property by mortgage or deed of trust as security for
money borrowed, or to re-erect or repair said building,
which lot, however, shall not be aliened or conveyed for
any other purpose whatever. The legal effect of these acts
was to waive and release the restrictions and conditions im-
posed by the acts of 1839 and 1840 and vest in the trustees
of the church society a fee simple title, with power to con-
vey the property for the purposes specified. *First Methodist
Episcopal Church* v. *Dixon, supra;* 13 Cyc. 707; *People*
v. *Ottawa Hydraulic Co.* 115 Ill. 281.

In addition to the acts referred to, the act of 1903
plainly and unmistakably authorizes the trustees to convey
or otherwise dispose of the property, the proceeds to be
appropriated to such uses and purposes as shall be author-
ized by vote of the trustees, provided such proceeds shall
not be used otherwise than in defraying the costs and ex-
penses of improving, maintaining, operating and caring for
the property and improvements thereon, paying obligations
of the church owning the property, and for church or re-
ligious purposes. The conveyance to the aid society under
the terms and conditions of the contract, which was the
consideration for the conveyance, was not in contravention
of the powers conferred by the act of 1903.

Appellant insists that the act of 1903 is unconstitutional,
as being special legislation. In our opinion the act is not
subject to any such objection. It cannot be said there is
no rational difference in situation, of the objects upon which
the classification made in the act rests. A law to be gen-
eral is not required to operate equally upon all persons or
objects, but if it operates equally upon all who are simi-
larly situated it is a general law. *Town of Fox* v. *Town of
Kendall,* 97 Ill. 72; *Park* v. *Modern Woodmen of America,*
181 Ill. 214; *People* v. *Nellis,* 249 id. 12.

Neither, in our opinion, is the transaction *ultra vires* the aid society. That society was organized as a corporation not for pecuniary profit and was authorized to purchase and hold real estate for the purpose of its organization. One of the purposes for which it was organized was "to contribute towards defraying the current expenses of Methodist Episcopal churches situated in the original town of Chicago, in said city." It holds the property, not for the benefit or profit of its members or stockholders, but for the purpose of enabling it to furnish the space for the church for religious uses and purposes and contribute $10,000 annually to the church society.

We are of opinion the superior court did not err in sustaining the demurrer and dismissing the bill. The decree is affirmed.

*Decree affirmed.*

---

(No 11588.—Judgments reversed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT L. HONAKER, Plaintiff in Error.

*Opinion filed December 19, 1917.*

1. CRIMINAL LAW—*when offenses of deserting wife and child are not proven.* The offenses of deserting the wife and minor child of the defendant and refusing to provide for their support where they are in destitute circumstances are not proven where the evidence shows that the defendant provided for their support until the wife voluntarily left him and took the child with her and there is no proof that he was thereafter called upon to support them or that he refused to do so.

2. SAME—*information must be supported by oath or affirmation.* Before a warrant can lawfully be issued for the arrest of a person on an information the information must be supported by an oath or affirmation under the bill of rights provision of the constitution, and unless the objection that the information is not sworn to is waived by the defendant it cannot be disregarded.

CARTER, C. J., dissenting.

WRIT OF ERROR to the County Court of Winnebago county; the Hon. LOUIS M. RECKHOW, Judge, presiding.