### Chicago Open Board of Trade v. The Imperial Building Company.

#### Gen. Nos. 13,098, 13,099, 13,304, 13,305, 13,306.

1. CORPORATION—*when organized primarily for the purpose of holding real estate.* A corporation organized for the purpose of leasing certain specified real estate for a term not to exceed ninety-nine years, upon which to erect a building for tenants, is organized to hold real estate within the prohibitory provision of the statute.

2. CORPORATION—*what constitutes charter of.* The charter of a corporation consists of its articles of incorporation, taken in connection with the law under which the corporation is organized.

3. CORPORATION—*what essential to existence of, de facto.* In order that there be a *de facto* corporation, two things are essential: First, there must be a law under which the corporation might lawfully be created; and second, user.

4.  CORPORATION—*when question of existence of, may be collaterally attacked.* The existence of a corporation may be collaterally attacked if such corporation appears to be neither a corporation *de jure* nor one *de facto.*

5.  CORPORATION—*what does not estop attack upon existence of.* By contract with an organization as a corporation, estoppel does not arise to attack its corporate existence if such organization possesses neither the legal entity of a corporation *de facto* nor one *de jure.*

Judgment by confession. Error to the Circuit Court of Cook County; the HON. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed and remanded. Opinion filed October 18, 1907.

Statement by the Court. Defendant in error entered judgment by confession against plaintiff in error under a power of attorney contained in a lease. By the terms of the lease The Imperial Building Company demised to the Chicago Open Board of Trade a part of the "Imperial Building" situated on Clark street, Chicago, from May 1, 1904, to April 30, 1909. The plaintiff in error moved out of the leased premises November 30, 1905, and paid the rent up to that time. The Imperial Building Company seeks now to collect rent for the unexpired term of the lease, and has entered a number of judgments for different installments of rent from time to time as they became due. The facts are substantially the same in each of these cases brought here on appeal and upon writ of error sued out to review the action of the Circuit Court denying motions by plaintiff in error to vacate the judgments by confession and grant leave to plead.

The motion to vacate and for leave to plead was accompanied by a number of affidavits to the effect that the Chicago Open Board of Trade is a corporation organized not for pecuniary profit, its object being to maintain a commercial exchange, acquire and disseminate commercial information and secure to its members the benefit of co-operation in business; that it has acquired a valuable good will, has one hundred fifty members, that its memberships have a market value of about $500 and that it maintains an exchange hall, for

608     Appellate Courts of Illinois.

Vol. 136.]     C. O. B. of T. v. Imperial Bldg. Co.

which purpose it leased the premises involved in this contro-versy. It is stated that in the summer of 1905, the defend-ant in error leased the third floor of the "Imperial Building" (in which were the premises leased to plaintiff in error) to the county of Cook, to be used for a Juvenile Court, that said third floor has ever since been used by such court, which it is said attracted great numbers of undesirable persons to the building, such as are wicked, depraved and addicted to lewd and vicious practices, filthy in habits, afflicted with diseases and emitting foul and offensive odors; that such persons crowd the elevator, hall and stairway and that patrol wagons and police officers congregate in front of the building, leading the public to believe that the place is being raided as a gambling resort, and that in consequence of those and other matters set forth in the affidavits the premises leased to the plaintiff in error were rendered unfit for its business, the plaintiff in error deprived of their beneficial use and constructively evicted from the leased premises.

Newman, Northrup, Levinson & Becker, B. F. Brady and Chester E. Cleveland, for plaintiff in error.

Taylor & Martin, for defendant in error.

Mr. Juustice Freeman delivered the opinion of the court.

It is contended in behalf of plaintiff in error, the Chicago Open Board of Trade, hereinafter called the defendant, first, that the Circuit Court was without jurisdiction to render the judgment by confession for want of proof that the lease and warrant of attorney were executed by the defendant; second, that the letting of the third floor of the building to the Juvenile Court, in connection with facts set forth in the affidavits, constituted a constructive eviction after which de-fendant in error, The Imperial Building Company, herein-after called the plaintiff, was entitled to no rent; third, that the question of eviction was one of fact which the defendant was entitled to have submitted to a jury; fourth, that the

supposed incorporation of the plaintiff is a nullity and that it is incapable of prosecuting any action as a corporation; and fifth, that the supposed incorporation of plaintiff not being authorized by law, such question of invalidity may be raised collaterally.

If it be true that plaintiff is not a valid legal corporation without power to sue or to be sued, and that the question of such validity may be raised collaterally, it will be unnecessary to consider other questions discussed in the briefs. A certified copy of the articles of incorporation of the Imperial Building Company, the plaintiff, was offered in evidence in support of the motion to vacate the judgment. It appears from such articles that the object for which the Imperial Building Company was formed was as follows: "To lease for a term not to exceed ninety-nine years lots 4 and 9 and part of lots 5 and 8, all in block 115 in School Section Addition to Chicago, for the purpose of erecting thereon a building for the accommodation of tenants, to make leases, collect rents and do all things incident to the management of said property."

The first section of the "Act concerning Corporations" (R. S. chapter 32) provides "that corporations may be formed in the manner provided by this act for any lawful purpose except banking, insurance, real estate brokerage, the operation of railroads and the business of loaning money, provided that * * * organizations for the purchase and sale of real estate for burial purposes only, may be organized and conducted under the provisions of this act." In section 5 of the same act provision is made that corporations formed under it "may own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business, * * * provided, however, that all real estate so acquired in satisfaction of any liability or indebtedness, unless the same may be necessary and suitable for the business of such corporation shall be offered at public auction at least once every year," etc; and unless such corporation shall sell such land either at public or private sale within five years, it shall be the duty of the State's attorney

39

610    APPELLATE COURTS OF ILLINOIS.

VOL. 136.]    C. O. B. of T. v. Imperial Bldg. Co.

to proceed by information in the name of the people against such corporation in the Circuit Court, which shall have jurisdiction to order the sale of such real estate.    In section 26 of the act it is provided that "no foreign or domestic corporation established or maintained in any way for pecuniary profit of its stockholders or members, shall purchase or hold real estate in this State, except as provided for in this act."

It would seem indisputable that a corporation organized for the purpose of leasing certain specified real estate for a term not to exceed ninety-nine years upon which to erect a building for tenants, is organized to hold real estate, within the prohibition of the statute.    The further purposes stated in the articles of incorporation, namely, that the real estate is to be acquired and held for the purpose of leasing said building, collecting rents and "doing all things incident to the management" of the property, are purposes for which private owners hold and use much of their real estate, especially in the heart of a large city.    The charter as a whole seeks to confer on the corporation the right to hold real estate and use it as might be done by a private individual owning or leasing the same real estate.    It is argued in behalf of plaintiff that the proper construction of the charter is ·"that the incorporators intended thereby expressly to organize a company to erect a building"; that "there is nothing in the laws of the State prohibiting the formation of a corporation for the purpose of erecting a building," and that it is a rule of construction that if a corporation is formed and the articles contain illegal powers, such powers are treated as surplusage and the corporation is entitled to exercise the legal powers only.    A primary difficulty with this argument is that the corporation is not by the terms of its charter organized merely to erect a building, but to acquire real estate for the purpose of erecting a building thereon and deriving income therefrom.    The corporation is not organized for any other purpose except to acquire the real estate specified and obtain income from its use.    If it had been incorporated for some lawful business purpose, then it might be permitted under the law to "own, possess and enjoy so

much real and personal estate as shall be necessary for the transaction" of its business. R. S., chapter 32, section 5. In First M. E. Church of Chicago v. Dixon, 178 Ill., 260–278, it is said to be "against the public policy of this State to allow corporations to hold real estate beyond what is necessary for the transaction of the business or specific corporate purpose of such corporations. (Carroll v. City of East St. Louis, 67 Ill., 568; United States Trust Co. v. Lee, 73 *id.*, 142.) * * * This public policy is further manifested by the express declaration found in section 1 of chapter 32 of the Revised Statutes, being the general act providing for the formation of corporations in this State, that charters shall not be granted to corporations to deal in real estate by virtue of the act, and the further fact that no enactment is to be found in the statutes of our State authorizing the formation of such companies." It was held in that case (page 275) that the corporation which was organized under a general law and granted additional powers subsequently by special acts was without power to erect on the premises a building to be rented for business and commercial uses and to engage in conducting and managing a structure of that character. In like manner, for like reasons of public policy and absence of legislative authority, we are of opinion that the appellee, purporting to be a corporation organized under the general laws of the State, is without power under such laws, notwithstanding its articles of incorporation, to acquire real estate to hold and use for the purposes specified in its charter, and is not a corporation *de jure* under the laws of the State. As said in Fritze v. Equitable B. & L. Society, 186 Ill., 183: "Where a corporation is formed under the general law, the law itself and not the declaration of incorporation * * * becomes the charter and enumerates the powers which are to be exercised." The charter consists of the articles of incorporation in connection with the law under which the corporation is organized. In The People v. Pullman Car Co., 175 Ill., 125–142, it is again stated that our Supreme Court "has declared that it is against the public policy of this State to allow corporations to own real estate beyond what

612    Appellate Courts of Illinois.

Vol. 136.]    C. O. B. of T. v. Imperial Bldg. Co.

is necessary for the transaction of their corporate business or such as is acquired in the collection of debts." To the same effect is Nat. Home Building Ass'n v. Bank, 181 Ill., 35, on pages 41–2.

It is urged, however, that appellee is at least a *de facto* corporation, and that the general doctrine is that all that is necessary to constitute a *de facto* corporation is to produce its charter and show user thereunder, and that a corporation acting as such under a charter cannot be questioned collaterally. In American Trust Co. v. M. & N. W. R. R. Co., 157 Ill., 641–652, the rule is thus stated: "Where there is a *de facto* corporation its corporate existence, except in a few exceptional cases, cannot be questioned collaterally and can only be inquired into by the State and in a direct proceeding. (Hudson v. Green Hill Seminary, 113 Ill., 618.) But in order that there should be a *de facto* corporation two things are essential: First, there must be a law under which the corporation might lawfully be created; and second, user." See also Gillette v. The Aurora Railways Co., 228 Ill., 261–277. It is true, as held in Smith v. Mayfield, 163 Ill., 447–457, and other like cases cited in behalf of appellee, that it is not necessary "in every suit brought by one person against another which involves some transaction had with a corporation" to make proof "that the corporation, although not a party to the pending litigation, is a *de jure* corporation," and that the legality of its organization cannot be inquired into collaterally, but can only be attacked by *quo warranto,* there being proof that such corporation is "a going corporation—*de facto* if not *de jure*—engaged in the actual transaction of business." It is true also that a user of a franchise may raise a presumption in a collateral proceeding that a corporation is in the rightful exercise of such power. Mitchell v. Deeds, 49 Ill., 416. But the plea of *ultra vires* may nevertheless be interposed in a collateral proceeding where the corporation is alleged to have performed an act which it was not under any circumstances authorized to perform. Rector v. Hartford Deposit Company, 190 Ill., 380–386. In this last cited case the appellee corporation

was incorporated "to erect and operate safety deposit vaults." The contention of appellant was that it had flagrantly abused its general power to acquire real estate and construct a building thereon for the purposes of its corporate existence. It was said by the court the earlier decisions in this State are to the effect that a corporation having general power to own real estate for corporate purposes may be required to answer to the State only for an alleged usurpation of power in the ownership and enjoyment of landed property; but that in later cases cited, the defense of *ultra vires* has been allowed to be collaterally maintained in cases where the *ultra vires* act of the corporation was wholly beyond and outside the general scope of its corporate powers. · In National Home Building Ass'n v. Bank, 181 Ill., 35–45, *supra,* it is said, quoting with approval from Central Transportation Company v. Pullman Palace Car Co., 139 U. S., 24, that a contract of a corporation which is *ultra vires* in its proper sense—that is to say, outside the object of its creation as defined in the law of its organization and therefore beyond the powers conferred upon it by the legislature—"is not voidable only, but wholly void and of no legal effect;" that when a corporation is acting within the general scope of its powers, the corporation and persons contracting with it may be estopped to deny that it has complied with legal formalities pre-requisite to its existence or action, because such formalities might in fact have been complied with. But when the contract is beyond the powers conferred upon the corporation by existing laws, neither the corporation nor another party to the contract can be estopped by assenting to or acting upon the contract, to show that it was prohibited by those laws. The court said (page 43) that the term *ultra vires* "has been applied indiscriminately to different states of fact in such a way as to cause considerable confusion." We regard these cases as decisive against the contention that the defendant under the evidence is estopped by reason of having contracted with the plaintiff, Imperial Building Company, to deny the corporate capacity of the latter to sue. To the same effect is Heaston v. The Cincinnati and Ft. Wayne R. Co., 16 Ind.,

275–279, where the doctrine is thus stated: "A *de facto* corporation that by regularity of organization might be one *de jure* can sue and be sued. And a person who contracts with such corporation while it is acting under its *de facto* organization, who contracts with it as an organized corporation, is estopped in a suit on such contract to deny its *de facto* organization at the date of the contract; but this does not extend to the legal power to organize. Hence if an organization is completed where there is no law or an unconstitutional law authorizing an organization as a corporation, the doctrine of estoppel does not apply."

In The People v. Chicago Gas Trust Co., 130 Ill., 268–294, it is said to be the duty of the judiciary to refuse to sustain that which is against the public policy of the State, when manifested by legislation or the fundamental law of the State. There is no controversy as to the facts and it appearing that no corporation can be lawfully organized under the laws of this State for the purpose stated in the articles of incorporation of the plaintiff, Imperial Building Company, such alleged corporation is without power to maintain this action.

The order of the Circuit Court in each case denying the motion of appellant and plaintiff in error to vacate the respective judgments by confession and to grant leave to plead, will therefore be reversed and the respective causes remanded to the Circuit Court with directions to grant said motions.

*Reversed and remanded with directions.*