# RIALTO COMPANY, Respondent, v. F. J. MINER, Appellant.

St. Louis Court of Appeals. Argued and Submitted March 2, 1914. Opinion Filed April 7, 1914.

1. **FOREIGN STATUTES: Pleading: Evidence.** Parties relying upon statutes of another State and decisions construing them must plead them and give them in evidence.

2. **APPELLATE PRACTICE: Disregarding Errors at Trial.** In a case where the statutes of another State upon which the defense was predicated were not pleaded, as they should have been, but both parties treated them as properly in evidence and both relied upon them on appeal, *held* that the appellate court would pass over the defect in the pleading and determine the case in accordance with the theory upon which it was tried and presented on appeal.

3. **CORPORATIONS: Nature of Plea of Nul Tiel Corporation.** A plea that plaintiff corporation is not a corporation *de jure* or *de facto*, and consequently not entitled to sue, is not a plea of *ultra vires*, which assumes a corporation either *de jure* or *de facto* and a misuse of or a departure from the franchise, but is a plea of *nul tiel* corporation.

4. **FOREIGN CORPORATIONS: Existence of Illinois Corporation: Facts Stated.** Plaintiff, claiming to be a corporation organized under the laws of Illinois, brought suit to recover rent due under a lease of offices in an office building owned by it and located in that State. Defendant pleaded, as a bar to a recovery, that plaintiff was not a corporation, either *de jure* or *de facto*, since plaintiff company was organized for the purpose of leasing real estate for a long term of years upon which to erect buildings for tenants, in contravention of the statutes of Illinois. The evidence tended to establish that plaintiff was incorporated, subsequently changed its name, increased its capital and enlarged its specification of objects, all in compliance with Chapter 32 of Hurd's Rev. St. of Illinois, of 1909, as shown by the certificates of the Secretary of State, and that it had carried on its business in that State for over twenty-two years. Its specification of enlarged objects declared that they were the securing or the erecting of a building to contain suitable or proper vaults and safes for the storage and protection of property, and to carry on therein the business of storing and caring for property, and to do all things incident to the management of said building. It was further shown that

the conducting of the business specified and the acquisition or erection of property therefor were authorized by the Illinois statutes; and was further shown that, under said statutes and the decisions construing them, a corporation formed for the sole purpose of acquiring and holding real estate was prohibited. *Held*, upon a review of the Illinois statutes and decisions construing them, that plaintiff is a valid corporation, and, as such, has a right to maintain the action for rent in the courts of this State; the fact that, in its specification of the objects of incorporation, the object of securing or erecting a building was placed before the statement of the business that was to be carried on therein not having the effect of making that object paramount to the conducting of the business specified.

5. ———: **Right to Maintain Action.** A foreign corporation, authorized as·such to make a lease of offices in a building owned by it in the State of its domicile, is entitled to maintain an action in this State against the lessee for unpaid rent.

6. **CORPORATIONS: Estoppel to Deny Corporate Existence.** Where a lessee deals with his lessor as a corporation, and exhibits a counterclaim or demand against it, when sued for unpaid rent, it hardly lies in his mouth to challenge plaintiff's corporate existence.

7. **LANDLORD AND TENANT: Action for Rent: Counterclaim: Sufficiency of Evidence.** In an action for unpaid rent, where the lessee counterclaims for the value of furniture taken from the demised premises without his consent, *held*, under the evidence, that the trial court did not err in directing a verdict against him on his counterclaim.

8. **TRIAL PRACTICE: Demurrer to Evidence: Rules of Decision.** Where the evidence is of that character that the trial judge would have a plain duty to perform in setting aside a verdict for plaintiff as unsupported by the evidence, it is his duty and prerogative to interfere before submission to the jury and direct a verdict for defendant.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer*, Judge.

AFFIRMED.·

*A. M. Frumberg, M. G. Reynolds* and *A. R. Russell* for appellant.

(1) The acquisition and holding of real estate is not a lawful purpose under the statutes and public

policy of the State of Illinois. Rev. Stat. of Illinois, Chapter 32, secs. 1, 5 and 26; Carroll v. East St. Louis, 67 Ill. 568; United States Trust Co. v. Lee, 73 Ill. 142; People v. Pullman Car Co., 175 Ill. 125; First M. E. Church v. Dixon, 178 Ill. 260; Bixler v. Summerfield, 195 Ill. 147; Board of Trade v. Building Co., 136 Ill. App. 606; Building Co. v. Bank, 181 Ill. 42; Building Co. v. Board of Trade, 228 Ill. 100; People v. Shedd, 241 Ill. 155; Walker v. Taylor, 252 Ill. 428. (2) The purpose for which plaintiff was organized was the acquisition and holding of real estate, and such being an unlawful purpose, the plaintiff could acquire no corporate existence. Board of Trade v. Building Co., supra; Building Co. v. Board of Trade, supra; People v. Shedd, supra. (3) The lack of corporate existence arising from attempted incorporation for an object unauthorized or prohibited by law may be raised collaterally. Gillette v. Railroad, 228 Ill. 276; American Trust Co. v. Railroad, 157 Ill. 653; Board of Trade v. Building Co., supra; Building Co. v. Board of Trade, supra. (4) The evidence of defendant, if true, showed that plaintiff had converted the property mentioned in the counterclaim; whether it was true was a question for the jury and not for the court. McKenna v. Walker, 85 Mo. App. 570; Knapp v. Knapp, 118 Mo. App. 692; Horton v. Terminal Hotel Co., 114 Mo. App. 261; Keyes v. Bank, 52 Mo. App. 330; Ireland v. Horseman, 65 Mo. 511; Allgear v. Walsh, 34 Mo. App. 139; Fulkerson v. Ingles, 17 Mo. App. 232; Smith v. Stephens, 9 Mo. 873; O'Donohoe v. Corby, 22 Mo. 393; Williams v. Wall, 60 Mo. 318.

*Jones, Hocker, Hawes & Angert, James C. Jones, Jr.,* and *Geo. F. Haid* for respondent.

(1) When a corporation has gone into operation, and rights have been acquired, every presumption should be made in favor of its legal existence. Duke

v. Cahawba Nav. Co., 10 Ala. 82. When an instrument is susceptible of two interpretations, one of which renders it invalid and the other will render it valid, the court will adopt the latter. Hunter W. Finch & Co. v. Furnace Co., 146 Ill. App. 257; Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85; Ormes v. Dauchy et al., 82 N. Y. 443; Curtis v. Gokey, 68 N. Y. 300; Tillitt v. Mann, 104 Fed. 421; Crittenden v. French, 21 Ill. 598; Cochran v. County of Vermillion, 113 Ill. App. 140; National Hollow Brake Beam Co. v. Interchangeable B. B. Co., 106 Fed. 693; Jewell Filter Co. v. Jackson, 140 Fed. 340. The articles of association of a corporation are its charter and is a contract between the State and the incorporators. 7 Am. & Eng. Encyc. Law, page 669; Bergman v. St. Paul Mut. Bldg. Assn., 29 Minn. 275; Morawetz on Private Corporations, Secs. 149, 367. (2) Plaintiff being a *de facto* corporation, its corporate capacity cannot be attacked collaterally, and if it has abused its powers as a corporation, that can only be inquired into at the instance of the State. Gillette v. Aurora Railways Co., 228 Ill. 261; Rector v. Hartford Deposit Co., 190 Ill. 380; Dauchy Iron Works v. Gunder, 150 Ill. App. 604; Thompson v. Candor, 60 Ill. 244; Finch v. Ullman, 105 Mo. 263; Springer v. Loan & Trust Co., 202 Ill. 17; Hayden v. Hayden, 241 Ill. 183. (3) Defendant by entering into a contract with the corporation and by preferring a counterclaim in this case is estopped from denying that plaintiff is a corporation. City of St. Louis v. Shields, 62 Mo. 247; Broadwell v. Merritt, 87 Mo. 95; Cresswell v. Oberly, 17 Ill. App. 281; Ward v. Railroad, 119 Ill. 287; McKnight v. Mineral Point, 1 Pinney (Wis.) 99; Improvement Co. v. Holway, 85 Wis. 344. (4) The proof in this case is insufficient to make out a case of liability against plaintiff on defendant's counterclaim, and the court below was correct in so instructing the jury. The evidence absolutely failed to make out a case of conversion by plaintiff of the defendant's property.

Wamsley v. Atlas Steamship Co., 168 N. Y. 533; National Bank v. Wheeler, 48 N. Y. 492; Duncan v. Fisher, 18 Mo. 403; Hawkins v. Hoffman, 6 Hill (N. Y.) 588; Packard v. Getman, 4 Wend. 615 (N. Y); Maguire v. Densmore, 70 N. Y. 417; Bolling v. Kirby, 95 Ala. 215; Davis & Son v. Hurt, 114 Ala. 146; Sturgis v. Reith, 57 Ill. 451; Rose v. Chandler, 15 Ill. App. 532; Stock Yards Co. v. Hawkins, 8 Kan. App. 155; 38 Cyc. 2008; 28 Am. & Eng. Ency. of Law, p. 682.

REYNOLDS, P. J.—This is an action by plaintiff, alleged to be a corporation duly organized and existing under the laws of the State of Illinois, to recover five months' rent claimed to be due under and by virtue of a lease executed by plaintiff as lessor, to the defendant, lessee, the lease covering certain rooms in a building owned by plaintiff in the city of Chicago, the lease dated March 9, 1908, annual rental $2610, $217.50 payable monthly in advance on the first day of each month. Alleging that the defendant lessee had paid the rent under the lease until November 1, 1909, but had made default in payments for the remaining five months of the term, judgment is demanded for the amount.

The answer, for a first defense, denies that plaintiff is a corporation duly organized and existing under the laws of the State of Illinois, and denies that it is a corporation at all, alleging that the statutes of Illinois prohibit a corporation from acquiring and holding real estate, and that it is contrary to the laws and public policy of that State to permit a corporation to be organized for the purpose of leasing specified real estate for a long term of years upon which to erect buildings for tenants, and that a corporation attempted to be organized for such purposes has no valid, legal existence; that the promoters of the plaintiff corporation, seeking to evade the law and the public policy of the State of Illinois, organized the plaintiff company for the avowed purpose of securing or erecting a building to contain

suitable and proper vaults and safes for the storage
and protection of property and to do all things incident
to the management of the building; that the avowed ob-
ject of the plaintiff company was not to conduct a
safety deposit vault business and that the company or
alleged corporation did not at any time, and never has
at any time, attempted in good faith to exercise any
corporate functions properly belonging to deposit or
safety vault companies, or any other functions not pro-
hibited by the laws of the State of Illinois; that plain-
tiff is neither a corporation *de jure* nor *defacto* and has
not the power to sue in this or any other court, and
that by reason of the facts above stated the lease set
up was and is null and void and directly contravenes
and is in violation of the statutes of the State of Illi-
nois and against the public policy of that State. ''De-
fendant for his further answer herein says that he
leased the premises herein referred to for the purpose
of operating and conducting a brokerage and commis-
sion business,'' in Chicago; that about the beginning of
the lease he moved into the offices or rooms in the build-
ing, furnished them with certain articles, enumerating
them, of which article defendant avers he was lawfully
possessed as of his own property and which were of the
value of $1500; that on or about May 25, 1908, defend-
ant quit his brokerage and commission business in the
offices, closed the offices, turned the keys over to plain-
tiff and left the furniture and fixtures in the premises;
that when defendant surrendered the keys of the offices
to plaintiff it was agreed between plaintiff and defend-
ant that the furniture and fixtures were to remain in
the premises and be in the care and custody of plaintiff
during the remainder of the term of the lease and that
plaintiff would not permit or cause the property to be
removed or molested during the term of the lease with-
out the written consent of defendant, but, disregarding
its duties plaintiff suffered and permitted the furniture
and fixtures to be removed from the offices and from its

Rialto Co. v. Miner.

care and custody during the term of the lease without the knowledge or written consent of defendant and wholly without his authority, and that the property thereby passed from the control of and was lost to defendant, to his damage in the sum of $1500, for which sum he demands judgment against plaintiff. This answer was duly verified by defendant, and a general denial, by way of reply, filed by plaintiff.

The cause came on for trial before the court and a jury and under the direction of the court the jury returned a verdict for plaintiff for the amount of the rental and interest and against defendant on his counterclaim, and judgment was entered accordingly. Interposing a motion for new trial and excepting to that being overruled, defendant has duly perfected his appeal to this court.

The errors assigned are to the action of the court in peremptorily instructing the jury to return a verdict for plaintiff on its cause of action and to return a verdict against defendant on his counterclaim.

At the trial of the cause, plaintiff introduced and read in evidence several sections from chapter 32 (Hurd's Ed. 1909), Revised Statutes Illinois, relating to corporations for pecuniary profit.

Section 1 of that chapter provides that corporations may be formed in the manner provided by the act "for any lawful purpose except banking, insurance, real estate brokerage, the operation of railroads and the business, of loaning money."

Section 2 provides for the manner of obtaining the license, which is that whenever any number of persons not less than three, nor more than seven, shall propose to form a corporation under the act, they shall make a statement to that effect under their hands and duly acknowledged before some officer in the manner provided for the acknowledgments of deeds, setting forth the name of the proposed corporation, the object for which it is to be formed, its capital stock, the number

of shares of which such stock shall consist, the location of the principal office and the duration of the corporation not to exceed ninety-nine years, which statement shall be filed in the office of the Secretary of State. If the object for which the corporation is proposed to be organized is clearly and definitely stated, "and is a lawful object," the Secretary of State shall thereupon issue to such persons a license as commissioners to open books for subscription to the capital stock of the corporation at such times and places as they may determine. Upon the filing of any statement with the Secretary of State for the purpose of obtaining a license to incorporate, he may propound such interrogatories as he shall deem necessary to ascertain the true object.

The third section provides that after the capital stock shall be fully subscribed, the commissioners shall convene a meeting of the subscribers for the purpose of electing directors or managers and the transaction of such other business as shall come before them.

The fourth section provides that the commissioners shall make a full report of their proceedings, "which report shall be sworn to by at least a majority of the commissioners and shall be filed in the office of the Secretary of State. The Secretary of State shall thereupon issue a certificate of the complete organization of the corporation, making a part thereof a copy of all the papers filed in his office in and about the organization of the corporation, and duly authenticated under his hand and seal of State, and the same shall be recorded in a book for that purpose, in the office of the recorder of deeds of the county where the principal office of such company is located. Upon the recording of the said copy, the corporation shall be deemed fully organized and may proceed to business."

Section 5 provides that "corporations formed under this act shall be bodies corporate and politic for the period for which they are organized; may sue and be

sued; may have a common seal, which they may alter or renew at pleasure; may own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business, and may sell and dispose of the same when not required for the uses of the corporation.''

Section 50 of the same chapter provides: ''That whenever the board of directors, managers or trustees of any corporation existing by virtue of any general or special law of this State, or any corporation hereafter organized by virtue of any law of this State, may desire to change the name, to change the place of business, to enlarge or change the object for which such corporation was formed, to increase or decrease the capital stock, . . . they may call a special meeting of the stockholders of such corporation, . . . for the purpose of submitting to a vote of such stockholders . . . the question of such change in name, change of place of business, enlargement or change of the object for which such corporation was formed, increase or decrease of capital stock.'' It is also provided that no alteration or change shall be made by virtue of this section to embrace any object that might not have been lawfully embraced in the statement and license issued before the organization of such corporation as provided in section 2 of the act.

Section 51 provides for the manner of calling the meeting for the above purpose, section 52 provides for the manner of voting at the meeting, and section 53 provides that if at any meeting held as specified, it shall appear that the propositions submitted have been adopted by a vote of two-thirds of all the voters represented by the whole of the stock of the corporation, a certificate thereof, verified by the affidavit of the president, and under seal of the corporation, shall be filed in the office of the Secretary of State, and with the recorder of deeds of the proper county, and that upon the filing of this certificate the changes proposed and

voted for at such meeting will be and are "hereby declared accomplished in accordance with said vote of the stockholders."

These are the pertinent sections of the chapter which were introduced and read in evidence by plaintiff. In addition to these, plaintiff introduced and read in evidence certain decisions of the Supreme Court and one decision of an appellate court of the State of Illinois, as follows: Rector v. Hartford Deposit Co., 190 Ill. 380; Springer v. Chicago Real Estate Loan & Trust Co., 202 Ill. 17; Hayden v. Hayden, 241 Ill. 183; Dauchy Iron Works v. Gunder, 150 Ill. App. 604. It also introduced the lease, which is in the ordinary form of lease and with a further covenant "that all personal property in the demised premises shall be at the risk of the lessee only; and if the whole, or any part thereof, shall be lost or ·destroyed or damaged by fire, water or otherwise, or by the leakage or bursting of water pipes, or by steam heating apparatus, or in any other way or manner, no part of said loss or damage is to be charged to, or borne by the lessor, its successors or assigns, in any case whatever." Oral evidence of occupation of the premises, demand and failure to pay rent was also introduced by plaintiff.

Defendant introduced evidence of the value of the furniture and that it had been removed without his consent, and also evidence which it is claimed tended to show that the furniture had been removed with the knowledge and consent of plaintiff. We will refer to this hereafter.

It has been the uniform holding of our courts that parties relying upon the statutes of a sister State must plead and give them in evidence. Neither party here pleaded any statute of the State of Illinois, but as the statutes above set out are relied upon and were treated as properly in evidence by both parties, and as each party relies upon them in their arguments before us,

we have concluded to pass over the defect in the pleading and to determine the case upon the theory upon which it was tried and is presented to us by the several counsel. The statutes as well as the decisions relied upon should not only have been given in evidence, but should have been pleaded. [McDonald v. Bankers Life Assn., 154 Mo. 618, 1. c. 628, and authorities there cited (55 S. W. 999)]. Failing that we would be obliged to treat this case as resting upon our own law, to do which would put defendant out of court on his main defense, for tested by our law and decisions, that defense would not stand.

Our statutes provide for the introduction and receipt in evidence of the printed statutes and decisions of other States. (Revised Statutes 1909, sections 6281 and 6332.) It is to be assumed, however, that they have been properly pleaded.

It has been said by our Supreme Court in Charlotte v. Chouteau, 25 Mo. 465, 1. c. 476, in treating of the admission in evidence of the written law of other States, and of the duty of the court to construe that law, "We do not mean by the written law the statements of text-writers or the decisions of courts; but these may be used with the evidence of experts to enlighten the court in expounding the foreign law; for when a foreign law has received a local construction, judicial decisions and law writers may be consulted, and professional witnesses may be examined for the purpose of ascertaining its meaning." With this rule in mind we have endeavored to ascertain the construction placed by the Illinois courts upon their law as touching the corporate existence of the plaintiff here, and the right to attack that collaterally.

It is claimed that plaintiff is not a corporation either *de jure* or *de facto* and consequently not entitled to sue in this or any other court, and that the lease entered into between it and defendant is of no validity.

This is not a plea of *ultra vires* but a plea of *nul tiel corporation*. It would seem that the plea of *ultra vires* should have no place here, for that plea assumes an incorporation, either *de jure* or *de facto,* and a misuse of or departure from a franchise. This distinction has not always been kept in mind, courts often discussing and determining cases pretty much on the same line, whether the plea is *ultra vires* or *nul tiel corporation*. Here corporate existence is denied. There is no pretense that the lease was not executed between the parties; nor is there a denial of its terms, nor of the non-payment of the rent for the months involved. In point of fact defendant admits the lease executed between him and plaintiff; his counterclaim endeavors to partially off-set the rents by reason of a breach of an agreement between him and plaintiff to take care of and safely keep property which he avers he had in the demised premises, this agreement growing out of the relation of landlord and tenant under the lease.

So we come squarely to the question as to whether plaintiff is a corporation *de facto* or *de jure* under the laws of the State of Illinois, and as such having power to make this lease, or for that matter make any contracts. It is not pretended that if the corporation is a lawful one the execution of the lease was *ultra vires*.

It is earnestly insisted by learned counsel for appellant, on the authority of Imperial Building Co. v. Chicago Open Board of Trade, 238 Ill. 100, that plaintiff is not either a *de jure* or *de facto* corporation. The opinion of the Supreme Court of Illinois in that case, approving as it does a decision of the appellate court in Chicago Open Board of Trade v. Imperial Building Co., 136 Ill. App. 606, is the strongest authority cited in support of the contention of the learned counsel for appellant. There Cook on Corporations, section 234 (see 6 Ed.), is quoted as defining a *de facto* corporation thus: "The corporation is a *de facto* corporation where there is a law *authorizing such a corporation* and

where the company has made an effort to organize under the law and is transacting business in a corporate name." (Italics ours.) It may be added that it is also said at section 232 of the same treatise, that "in general, a party contracting to pay money to a corporation, or to transfer property to it as a corporation, cannot avoid the obligation of that contract by alleging the fact that the corporation was not duly incorporated, if it be proved that such a corporation *might have been organized under the statutes,* and that the supposed corporation attempted to so organize and proceeded to transact business." (Italics ours.)

Applying the first definition as above, the Illinois Supreme Court held that the appellant there, plaintiff below, was not a *de facto* corporation. The object for which the corporation was formed, as stated in the certificate in the Imperial Building Company case, was to lease for a term of years, not to exceed ninety-nine years, certain lots "for the purpose of erecting thereon a building for the accommodation of tenants, to make leases, collect rents and do all things incident to the management of said property." The court held that a corporation cannot be organized under the Illinois laws for the acquisition of real estate, erecting a building thereon, and renting to tenants as a mere investment; that acquiring the lease for ninety-nine years is acquiring real estate. Quoting section 234 from Cook on Corporations, as above, as to a corporation *de facto,* it is held that the plaintiff is not a corporation *de facto;* nor is it one *de jure,* for its stated object is illegal, and that the lessee of such a corporation, in such a proceeding as then before the court, could attack that existence.

That the plaintiff here was duly incorporated and that its subsequent change of name, increase of its capital and enlarged specification of the objects, were all done in compliance with the laws of the State of Illinois, is clear, in fact is not contested. The contention

of learned counsel for appellant turns on the proposition that it not only does not appear that this plaintiff "might have been organized" under the statutes, but that it affirmatively appears that its proposed objects were unlawful; that the object stated is an unlawful object, under the laws of Illinois governing the creation of corporations, and the attempted incorporation a nullity.

We come, then, to the real point of inquiry, that is, the stated object of this corporation. As set out in the original articles, it is "to secure or erect a building to contain suitable and proper vaults and safes for the storage and protection of property and to do all things incident to the management of said building." This original certificate was filed in the office of the Secretary of State of Illinois on October 21, 1884, and the Secretary of State certifies under his hand and the Great Seal of the State, that it was duly signed and acknowledged for the organization of the Chicago Deposit Vault Company "under and in accordance with the provisions of an act concerning corporations," that being the act, pertinent sections of which we have above set out. It is further stated in this certificate of the Secretary of State that a license had been issued to persons named as commissioners to open books for the subscription to the capital stock "of said company," and that the commissioners had, on March 26, 1885, filed in the office of the Secretary of State a report of their proceedings had by them under the license theretofore issued by the Secretary of State. Where upon the Secretary of State, under date of March 26, 1885, still under the "Great Seal of the State," certifies "I, . . . Secretary of the State of Illinois, by virtue of the powers vested in me by the laws, do hereby certify that the said, The Chicago Deposit Vault Company, is a legally organized corporation under the laws of this State." Follows in due time the certificate of the Secretary of State, again under the "Great Seal of

the State," that on January 9, 1888, the Chicago Deposit Vault Company, had filed a certificate attached, of increase of stock, increasing it from $500,000 to $600,000. Then follows a certificate of the Secretary of State, still under the "Great Seal of the State," that on July 30, 1895, the Chicago Deposit Vault Company had filed, a copy attached, a certificate of change of name and enlargement of objects of the company. That attached certificate sets out that at a special meeting of the stockholders of the Chicago Deposit Vault Company, held at its office on the 13th of July, 1895, it was voted by the requisite vote of two-thirds of all the votes represented by the whole stock "of said corporation" to change the name "of said corporation" to "The Rialto Company," and also to enlarge or change the objects for which such corporation was formed so the same should be and read as follows: "The objects for which it is formed is to secure or erect a building to contain suitable or proper vaults and safes for the storage and protection of property and to carry on therein the business of storing and caring for property and to do all things incident to the management of said building." So far as the certificates of the officer of the State are concerned, there can be no question but that they are all according to law, and that this plaintiff is a corporation *de jure,* provided its objects are legal. There is no defect whatsoever in the matter of its original incorporation, increase of stock, change of name and enlargement of objects.

It must be admitted that the statement of the objects is rather awkward. But we hold that it is sufficiently stated to constitute them objects for which a corporation may be lawfully formed in Illinois. In other words it is such a corporation as "might have been organized under the statute." It proposed to secure or erect a building to contain suitable and proper vaults and safes for the storage and protection of property and to carry on therein the business of

storing and caring for property. That the acquisition and erection of a building was placed before a statement of the business which was to be carried on therein, does not have the effect of making that object paramount to the carrying on of that particular business. The original name, "Chicago Deposit Vault" is not without significant suggestion of the primary object. Corporations do not usually select names foreign to their main object. As we understand the argument of the learned counsel for appellant, they concede that if this statement had been that the proposed corporation was to be organized with the object of storing and protecting property and for that purpose to acquire or erect a building, it would have stated a lawful object, although it was unnecessary to have stated this latter, inasmuch as the law allowed it to hold real estate without setting that out in the certificate as an object, when to hold real estate was necessary for carrying on the object. Their argument is that setting out that the acquisition of a building as an object and setting it out first, controls, and that the rest merely sets out the use. We are unable to see that stating the object as here brings about that result. The clause as to acquiring real estate may be entirely eliminated and a lawful object still remains. It will be observed that the object stated in the Imperial Building Company case, supra, is essentially different from that before us. That presented a real estate investment, pure and simple: nothing else. This presents a lawful business as an object —the "storage and protection of property," maintaining "suitable and proper vaults and safes." So we do not think that the Imperial Building Company case is analogous or decisive of the case before us. Even in that case it is said (l. c. 113): "We are not to be understood as holding appellee (defendant below) is not liable in any event for use and occupation of appellant's premises, for we are of the opinion if it occupied them under an agreement to pay rent, a liability was

created which may be enforced in some appropriate proceeding, but it cannot be enforced in this suit." The Imperial Building Company case arose on a judgment for rent, entered against defendant under a power in the lease. The lessee made a motion to vacate that judgment and the case came before the Supreme Court on the validity of the judgment. That involved the validity of the lease, the action being on and under the lease, and the Supreme Court held that the body making the lease not having any corporate existence, could not make the lease. That being so, and not stopping to examine into the practice of Illinois, we can only say we are at a loss to understand how the rental or value of the occupation could be recovered in any other form of action.

Referring to the Illinois decisions which were introduced in evidence by plaintiff here, in Rector v. Hartford Deposit Co., supra, the trial court had refused to give an instruction to the effect "that the plea of *ultra vires* may be successfully interposed in a collateral proceeding where the corporation is alleged to have performed an act which it was not, under any circumstances, authorized to perform, but that where the act is one which at most is but a mere abuse or excessive use of the general power conferred upon the corporation by its charter, such plea cannot be successfully interposed, because the question of *ultra vires* can in such cases be raised only in a direct proceeding by the State to oust the corporation of its usurped powers." The Supreme Court held (l. c. 387) that the proposition presented the correct legal doctrine. "That the appellee (plaintiff company) possessed ample power to acquire real property and construct a building thereon for the purpose of transacting therein the legitimate business of the corporation is beyond the range of debate. Nor is the contrary contended, but the insistence is that under the guise of erecting a

building for corporate purposes the appellee company purposely constructed a much larger building than its business required, containing many rooms intended to be rented to others for offices and business purposes, among them the basement rooms contracted to be leased to the appellant, and that in so doing it designedly exceeded its corporate powers. The proposition of appellant therefore is, that the appellee corporation has flagrantly abused its general powers to acquire real estate and construct a building thereon. Conceding that position to be correct, we do not think it can be availed of as a defense in an action brought by the corporation to recover rent contracted to be paid for the use of one of the rooms of the building.'' Moreover, it was in evidence in that case that the building erected consisted of fourteen stories; that it contained the demised premises in the basement rented to the appellee, eight stores on the ground floor and over 100 suites of offices on the upper floors, the only ''safety deposit vaults'' erected or operated by plaintiff consisting of a small vault upon the fourth floor of the building constructed in one end of one of the private offices used by the company for its officers and agents. With these facts, however, in the case, the Supreme Court of Illinois held, as above, that the existence of the corporation was not open to collateral attack.

In Springer v. Chicago Real Estate Loan & Trust Co., supra, Rector v. Hartford Deposit Company, supra, is affirmed, the court saying that the corporation plaintiff has power to own and hold real estate for some purposes, and whether it exceeded its power in accepting the conveyance to the premises described in the lease, can only be bought into question by a proceeding instituted in behalf of the State.

In Hayden v. Hayden, supra, as well as in Dauchy Iron Works v. Gunder, supra, the above cases are followed. The latter case by the same appellate court in

which the Imperial Building Company case had been determined. (See 136 Ill. App. 606.)

We have referred to the laws of Illinois concerning the mode of incorporating these companies and to the certificates of incorporation granted by the Secretary of State to this plaintiff. It is clear that all the forms of law were observed in its original incorporation and in the subsequent changes. It is to be borne in mind that we have before us a corporation of a sister State, certified by the proper officer, under the Great Seal of the State, to be a lawful corporation, with a lawful object. We are asked to declare it void when for over twenty-two years, so far as appears by the record or anything before us in the case, it has been carrying on business and conducting its operations as a corporation at the home of its creation, under the sanction, presumably under the eyes, of the officers of the State and under a law that specifically provides for the ascertainment of the true objects of the corporation by the Secretary of State before he issues any certificate of incorporation. It is not out of place to add that, while not in evidence, section 193 of this same chapter 32, under which this corporation is incorporated, requires it to file annually, reports of its condition with the Secretary of State, failure to do which entails a heavy penalty. In the light of all these, we are not prepared to say that this corporation has no valid existence, either *de facto* or *de jure,* under the laws of the State of Illinois.

In Wells Co. v. Gastonia Cotton Mfg. Co., 190 U. S. 177, the Supreme Court of the United States held, among other things, that the plaintiff having become in law a corporation when its charter was approved and the Great Seal of the State affixed thereto, it was entitled as such corporation to sue in the United States Circuit Court as a citizen of Mississippi; that the United States Court would not inquire into the validity of its corporate existence; that if the organization of

the company as a corporation was tainted with fraud, it was for the State, by appropriate proceedings to annul the charter. It is true that there the court held that subscription to and payment of the authorized capital was not a prerequisite to incorporation, but it is instructive as to the credit to be given to the acts of State officers. Here, under the most solemn forms of law and on the judgment of the proper officer of the State of Illinois, plaintiff is certified to be a duly incorporated body of that commonwealth. Those officers have certified that plaintiff is a corporation organized and existing under the laws of the State of Illinois. As such it was authorized to enter into this lease, and on the violation of the terms thereof, is entitled to maintain its action in this State against this defendant, a citizen of and found in this State. It may be further said that dealing with plaintiff as a corporation, exhibiting a counterclaim or demand against it, arising out of this transaction, it hardly lies in the mouth of defendant to challenge the corporate existence of plaintiff. The learned trial court therefore committed no error in directing a verdict for plaintiff on its cause of action.

It is suggested that plaintiff did not carry on the business of a safety deposit company; that all the safety vaults it had were in the several offices. That may be, but that was very much the situation in Rector v. Hartford Deposit Co., supra. There it was held that this did not vitiate the franchise of the corporation.

Nor did the trial court commit error in directing a verdict for plaintiff and against defendant on defendant's counterclaim. That counterclaim was supported by no substantial testimony in the case. It is true that the defendant testified that the furniture was taken out of his offices without his knowledge or consent, testified to its value, and there was evidence that an employee of plaintiff had signed a ticket allowing some of it, what pieces or of what value does not appear,

to be taken down in the elevators. There is no proof that defendant surrendered the keys before the end of the term. Nor does it appear when the furniture was removed. Defendant's own evidence tends to show that it was removed before the end of the term and while defendant still was in possession of the rooms under his lease. The lease expressly exempted plaintiff from responsibility for any furniture while in the office, and the proof of a subsequent agreement to look after it was too vague and unsubstantial to impose any duty on plaintiff. There was evidence that the furniture was removed by persons connected with defendant himself and no evidence that plaintiff or any one authorized by it, had participated in or even assented to the removal. The learned trial court committed no error in taking that from the jury. "Where the evidence is of that character that the trial judge would have a plain duty to perform in setting aside the verdict as unsupported by the evidence, it is his duty and his prerogative to interfere before submission to the jury and direct a verdict for the defendant." [Hite v. Metropolitan Street Ry. Co., 130 Mo. 132, l. c. 141, 31 S. W. 262, 32 S. W. 33; Fuchs v. City of St. Louis, 167 Mo. 620, l. c. 631, 67 S. W. 610; Furber v. Kansas City Bolt & Nut Co., 185 Mo. 301, l. c. 311, 84 S. W. 890.]

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.